FILED

APR 2 2 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

CATUARA,                          )
                                  )
              Plaintiff,          )
                                  )
v.                                )      No. 1:03 CV 563
                                  )
                                  )
HEAVNER HANDEGAN et al.,          )
                                  )
              Defendants.         )
                                  )

DOCKETED

APR 2 4 2003

### NOTICE OF FILING

To:  Jefferey T. Mitchel                Patrick Thomas Stanton
     KONICEK & DILLION                  SCHWART, COOPER
     21 W. State St.                    GREENBERG & Krause
     Geneva, Illinois                   180 N. LaSalle Street #2700
     630/262- 9659                      Chicago, IL 60601
                                        312/782-8416

     PLEASE TAKE NOTICE that on  April 22, 2003, Chad F. Catuara's Motion to
Strike Defendants' Motions to Dismiss was filed with the Court, a copy hereto attached.

                                        By: _Chad F Catuara_
                                            Chad F. Catuara

### CERTIFICATE OF SERVICE

     I hereby certify delivery of a copy of Chad F. Catuara's Motion to Strike
Defendants Motion to Dismiss to the person(s), as listed above , on the 22nd day of April
2003  prepaid first class U.S. mail.

                                        By: _Chad F Catuara_
                                            Chad F. Catuara

**FILED**

APR 2 2 2003

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

CATUARA, )
)
)
Plaintiff, )
)
v. ) No. 1:03 CV 563
)
)
)
HEAVNER HANDEGAN et al., )
)
Defendants. )
)

**DOCKETED**

APR 2 4 2003

## PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' MOTIONS TO DISMISS

Plaintiff, Chad F. Catuara, moves this court to strike Defendants' motions to

dismiss on grounds of insufficient defense, impertinent and immaterial matters and/or in

the alternative for more definite statements, pursuant to rules 12(e) and 12(f) of the

Federal Rules of Civil Procedure.

1.　　Plaintiff Catuara seeks relief from the State actions through the Federal

Courts under the superior jurisdiction conveyed by the Fair Debt Collection Practices (15

U.S.C. § 1692k(d)), The Truth in Lending (15 U.S. C. 1640(e)), and Fair Credit

Reporting (15 U.S.C. 1681s-2(b)) Acts.　Due his desire for judicial economy, Plaintiff

has consolidated his eight FDCPA claims, which in all respects could have been brought

separately, into one action with additional federal claims and supplemental state claims,

under 28 U.S.C. § 1367.　The FDCPA counts I-VIII being the central focus carrying this

action were initiated by Defendants deceptive and unfair collection tactics.

2.　　The **FDCPA** violations are **not dependant** on the **validity of the alleged**



**mortgage transaction.** These violations stand on their own.

3.  Defendant's WaMu (collectively) and Heavner et al. intentionally chose to carry out these practices and activities in the State of Illinois where each defendant group conducts its business. All defendants maintain sufficient contacts with the State of Illinois to be held personally liable for their actions.

4.  Count XIII's Truth in Lending Act violation contains a recoupment feature (governed by State recoupment counterclaim laws) which waives the 1 year statute of limitations. Plaintiff Catuara raised TILA disclosure issues in the State proceedings.

5.  Plaintiff's claims pertaining to the UCC and Illinois Civil Procedure arose from the actions and/or non actions of Defendants in and preceding to the State cause. These counts might need to be restated as counterclaims via a supplemental filing or an amended complaint, pursuant to rules 15 (a) and 15 (d) of the Federal Rules of Civil Procedure.

6.  Plaintiff has provided sufficient grounds to carry this action past a cursory dismissal and could likely seek a ruling on the FDCPA counts as a matter of law.

7.  Defendants' stance regarding Plaintiff's theory being fictitious, frivolous, finding absolutely no basis in law or common sense are in direct contradiction to long standing written declarations by the Federal Reserve; premises of: common-law, the UCC, contract law, principals of equity, good faith, disclosure laws, the concept of valuable consideration etc. This blatant attempt to discredit Plaintiff and his so-called theory, which is essentially a secondary issue to the numerous violations, is immaterial, impertinent, scandalous, argumentative, and should be stricken as a matter of law. This

long and arduous trail could have been easily avoided by providing the minimalist of discovery in the State Court.

8.   Plaintiff incorporates and attaches a memorandum of law in support of this motion.

WHEREFORE, Plaintiff Chad F. Catuara, request the Court enter an order:

1)   Striking Defendants' Motions to Dismiss in their entirety;

2)   Granting the Plaintiff time to supplement his complaint to the findings or leave to amend as necessary.

3)   Instructing Defendants participate in "good faith" discovery.

Respectfully submitted,

By:  Chad F. Catuara

Chad F. Catuara
14540 Lavergne
Midlothian, Illinois 60445
(708) 597-1873

**Service List**

Jefferey T. Mitchel
KONICEK & DILLION
21 W. State St.
Geneva, Illinois
630/262- 9659

Patrick Thomas Stanton
SCHWART, COOPER
GREENBERG & Krause
180 N. LaSalle Street #2700
Chicago, IL 60601
312/782-8416

**FILED**

APR 2 2 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

CATUARA,

               Plaintiff,

     v.

HEAVNER HANDEGAN et al.,

               Defendants.

No. 1:03 CV 563

**DOCKETED**

APR 2 4 2003

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' MOTIONS TO DISMISS

Plaintiff, Chad F. Catuara, submits this consolidated two part memorandum in support of his 12(e) make more definite statement and 12(f) motion to strike Defendants' motions to dismiss.

### WAMU SPECIFIC AND PLEADINGS COMMON TO EACH PARTY

**I.    INTRODUCTION**

Plaintiff's thirty-one count complaint arose through Washington Mutual's agent's unfair and deceptive collection practices regarding the foreclosure action. Plaintiff Catuara never succumbed to agreeing to the existence of a valid mortgage transaction and insisted the WaMu Defendants concealed material facts operating without his intent, knowledge, or authorization. However, the validity of the mortgage, at present, is a non issue with regard to the FDCPA violations, which for the sake of judicial economy, Plaintiff Catuara joined to this action. "When reviewing a motion to dismiss,

the court must accept as true all material allegations of the complaint and must construe the complaint in favor of the non-moving party." Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint and drawing all reasonable inferences in the non-moving party's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Id. (citing ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994)).

## II. FDCPA SUBJECT MATTER JURISDICTION IS NOT DEPENDANT ON PROMISSORY NOTE.

Defendants contentions that Plaintiff Catuara's Promissory Note theory is groundless is a moot point counsel attempts to use to distract the Court. Plaintiff Catuara will ignore these baseless arguments and focus on the actual settled law concerning FDCPA claims. "[a]ction was not contingent on the validity of the underlying debt. McCartney v. First City Bank, 970 F.2d 45 (5th Cir. 1992). "Whether the consumer had incurred the alleged debt was a separate issue from his FDCPA claim." Clark v. Retrieval Masters Creditors Bureau, Inc., 185 F.R.D. 247 (N.D. Ill. 1999). Whether the debt being collected was actually owed was irrelevant to determination of violation of FDCPA. Adams v. First Federal Credit Control, Inc., 1992 WL 131121 (N.D. Ohio 1992).

## III. PERSONAL JURISDICTION OVER WAMU INDIVIDUALS

Plaintiff Catuara states in his complaint heading: Jurisdiction and Venue ¶ 10, "WaMu transact business in Illinois and the conduct complained of occurred here."

1. <u>Long-Arm Statute</u>

According to information gathered at WaMu.com, WaMu's third quarter filing

with the SEC in 2002 states:[1]

> "In October, Washington Mutual announced that Chicago
> is the fifth new market for its innovative Occasio financial
> stores. The company plans to open up to 70 Occasio financial
> centers in the greater Chicago area by the end of 2003.
> Washington Mutual is Illinois' No. 1 home lender and currently
> has about 2,000 employees locally, primarily in Home Loans &
> Insurance Services loan servicing and support centers. Washington
> Mutual also operates more than 20 business offices – including
> Home Loan Centers and Washington Mutual Finance offices – in
> greater Chicago.

In addition, Wamu maintains headquarters operations in Vernon Hills, Illinois.

This information coupled with the fact that WaMu participates in heavily regulated

financial sectors requiring State licensing provides sufficient grounds for the WaMU

Defendant's expectation of being haled into an Illinois court meeting each and every

requirement within Defendants cited cases.

2. <u>Fiduciary Shield Doctrine</u>

In this instance, again, Plaintiff bases his reliance on settled case history. The

fiduciary shield doctrine is discretionary in nature and should be applied only where

equity demands it. <u>Washburn v. Becker</u>, 186 Ill. App.3d 629, 134 Ill.Dec. 418, 421, 542

N.E.2d 764, 767 (App. Ct.), appeal denied, 127 Ill.2d 643, 136 Ill. Dec. 610, 545 N.E.2d

134 (1989). It would be inappropriate to invoke the doctrine to protect these defendants.

Plaintiff Catuara has an alleged forty year mortgage with WaMu which had entailed

regular monthly billing statements followed by return wire payments.

---

[1] WaMu.com's interactive features solicit personal information and accept monthly payments
from Illinois residents. "This is roughly analogous to Goldstar setting up a 24-hour store front in
Illinois..." <u>Arnold v. Goldstar</u> (N.D. Ill. Aug. 20, 2002.) (Gotshall, J.)

WaMu is presently litigating foreclosure cases numbering in the thousands in the Cook County Circuit Court.

> "Rollins' underlying holding was that '[j]urisdiction is
> to be asserted only when it is fair, just, and reasonable
> to require a non-resident defendant to defend an
> action in Illinois, considering the quality and nature
> of the defendant's acts which occur in Illinois or which
> affect interests located in Illinois.' Id. at 398, 565 N.E.2d
> at 1316. This statement suggests a broader approach to the
> fiduciary shield doctrine than merely asking whether the
> defendant exercised discretion or whether he was acting in
> an individual or representative capacity. In each case, a
> court deciding whether jurisdiction would be appropriate
> must examine the equities of the situation in light of all
> the circumstances."

Brujis v. Shaw, (N.D. Ill. 1995). Fiduciary shield doctrine does not apply where employee has the power to decide what will be done and chose to commit tortious acts that subjected him to long-arm jurisdiction.

## IV.    PLAINTIFF'S SUPPLEMENT TO CLAIMS FOR RELIIF.

### A.    FDCPA Counts I and III

While Defendants WaMu insist they are immune to FDCPA violations, its denials are refuted by the plain language of the Act and supporting Federal Trade Commission letters (attached hereto as Exhibits "A" and "B"). The Court has often repeated the general proposition that considerable respect is due "the interpretation given [a] statute by the officers or agency charged with its administration." Zenith Radio Corp. v. United States, 437 U.S. 443

#### 1.   WaMu Falls Under Classification Of Collector In The Case At Bar.

Home savings of America, WaMu's predecessor, claims to have allegedly loaned Plaintiff Catuara money, WaMu has, thus far, refused to substantiate that fact. WaMu

appears to be in the business of collecting debts with some $337 million in Real Estate acquired through foreclosure as filed on page 4 of its consolidated statement of cash flows for the 3rd quarter of 2002. In the plain language of the FDCPA § 1692a(6)(F) The term "debt collector" **does not** include: (ii) **concerns a debt that was originated by such person.** "…our role, when the language of a statute is plain, is to enforce that statute according to its terms." See, e.g., <u>Central States v. Bell Transit Co.</u>, 22 F.3d 706, 710 (7th Cir. 1994). In no manner whatsoever can WaMu claim to be the originator of the alleged debt in dispute. This "Bank" surely gives the distinct impression it collects debts.

## 2. Servicer Wamu's Liability

Financial institutions attempts to muddy the paper trail is a typical everyday practice. The ink on a supposed legitimate transaction hasn't even dried and the instrument has likely already been assigned to another party. In the instant case, WaMu acquired the alleged Promissory Note through its acquisition of Home Savings of America, then ultimately sold off the same to Fannie Mae. In reference to this course of action Plaintiff references a Federal Trade Commission staff opinion letter dated May 15, 1978:

> "It is our understanding that your letter refers specifically
> to situations in which Security Pacific Corporation '…
> purchases a loan from another lender, sells it to an investor
> and retains the servicing and collection.'
>
> 'Further, if those consumer loans, which you describe in
> pargraphs two and three of your March 21, 1978 letter are
> in default when sold or go into default after they are sold,
> retention of the servicing and collection aspects of the loans
> would surely subject Security Pacific to the requirements
> of the Act not withstanding the exclusionary language

in sections 803(6)(G)(ii)-(iii)of the Act."[2]

The exact same situation as the case at bar. An exhaustive review of the case history quoted by Defendants WaMu reveals a compilation of off point diversionary material. Vicarious liability will be imposed on an attorney's client for the attorney's FDCPA violations if the attorney and client were both debt collectors. First Interstate Bank v. Soucie, 924 P.2d 1200 (Colo. Ct. App.1996). WaMu's liability does not rest solely on declaration as "debt collector."

## B.    FCRA CLAIMS IX-XI

As usual, Plaintiff must correct the misdirected presumption of baseless claims. The credit reporting violations result from the FDCPA action itself at § 1692(e)(8). Reflecting all Defendants requirements to apprise the credit reporting agencies of the disputed debt. Plaintiff respectfully apologizes for the oversight of filing the incorrect section identifiers, however, Plaintiff Catuara will gladly alert the government agencies to these grave injustices. With this volume of material a harmless error can be expected.

Plaintiff Catuara shall either file a supplement or seek leave to amend the complaint consolidating these three mistaken counts into one, under 1681s-2(b). The consumer may bring a cause of action against the furnisher if it does not comply with the provisions of § 1681s-2(b). "... it is clear that Whitesides herself did notify BOL via letter on December 19, 1996..." See Whitesides v. Equifax Credit Info. Serv., 125 F. Supp.2d 807, 812 (W.D. La. 2000); McMillan v. Experian Info. Serv., Inc., 119 F. Supp.2d 84, 88 (D. Conn. 2000); Olexy v. Interstate Assurance Co., 113 F. Supp.2d 1045,

---

[2] Due the age of this Opinion Letter, it is possible that FDCPA updates have slightly changed in section reference. Currently the section is identified as (F)(ii)-(iii), unless this was originally an oversight.

1047-48 (S.D. Miss. 2000); <u>Dornhecker v. Ameritech Corp.</u>, 99 F. Supp.2d 918, 927

(N.D. Ill. 2000); <u>Campbell v. Baldwin</u>, 90 F. Supp.2d 754, 756 (E.D. Tex. 2000).

**C.    Plaintiff's RESPA Count XII**

Plaintiff Catuara contends Defendants take this issue out of context with selective

review concerning matters presented in Plaintiff's written communications, which speak

for themselves. "RESPA's principle purpose is to protect home buyers from material non-

disclosures in settlement statements and abusive practices in the settlement process.

<u>Cortez v. Keystone Bank</u>, 2000 (E.D.Pa. May 2, 2000). RESPA applies not only to the

actual settlement process, however, but also to the servicing of federally regulated

mortgage loans." <u>MorEquity, Inc. v Naeem</u>, 118 F. Supp. 2d 885, 901 (N.D. Ill. 200).  In

lieu of a review of the actual communications from Naeem to MorEquity Plaintiff

Catuara suggests Defendants statements are broad and over reaching conclusive in nature.

Plaintiff states inquiries relating to bookkeeping entries and call reports directly correlate

to servicing matters.  Plaintiff respectfully requests pursuant to 12(e) the Defendants

make more definite statements.  A brief would be reasonable.

**D.    Truth in Lending  XIII, as Recoupment/ Counterclaim, Waives**

**Statute of Limitations**

Defendants as expected gathered a wealth of information relating to limitations

cases. I can only surmise Defendants do not care to accept the stark reality that Courts all

across the land hold a different view.  Also, the TILA gives a litigant the option of choice

of venue to litigate. The Truth in Lending Act establishes federal jurisdiction for the

plaintiff's cause of action. 15 U.S.C. § 1640(e). <u>Gammons v. Domestic Loans of</u>

<u>Winston-Salem, Inc.</u>, 423 F. Supp. 819 ( M.D. N.C.1976).

## § 1640(e)

"expressly provides that the Act's 1-year limitation
on actions for recovery of damages "does not bar . . . assert
[ion of] a violation . . . in an action . . . brought more than
one year from the date of the . . . violation as a matter of
defense by recoupment." This quite different treatment
of recoupment of damages and rescission in the nature of
recoupment must be understood to reflect a deliberate
intent on the part of Congress, see Bates v. United States,
522 U.S. 23, 29-30, and makes perfectly good sense. Since
a statutory rescission right could cloud a bank's title on
foreclosure, Congress may well have chosen to circumscribe
that risk, while permitting recoupment of damages regardless
of the date a collection action may be brought. Pp. 415-419.

They are, of course, correct that as a general matter a
defendant's right to plead "recoupment," a "`defense
arising out of some feature of the transaction upon
which the plaintiff's action is grounded,'" Rothensies
v. Electric Storage Battery Co., 329 U.S. 296, 299 (1946)
(quoting Bull v. UnitedStates, 295 U.S. 247, 262 (1935)),
survives the expiration of the period provided by a statute
of limitation that would otherwise bar the recoupment claim
as an independent cause of action. So long as the plaintiff's
action is timely, see ibid., a defendant may raise a claim
in recoupment even if he could no longer bring it indepen-
dently, absent "`the clearest congressional language'" to the
contrary. Reiter v. Cooper, 507 U.S. 258, 264 (1993) (quoting
United States v. Western Pacific R. Co., 352 U.S. 59, 71
(1956)). As we have said before, the object of a statute of
limitation in keeping "stale litigation out of the courts," id.,
at 72, would be distorted if the statute were applied to bar
an otherwise legitimate defense to a timely lawsuit, for
limitation statutes "are aimed at lawsuits, not at the
consideration of particular issues in lawsuits," ibid."
Beach v. Ocwen Fed. Bank, 523 U.S. 410 (1998).

The court looked to the purpose of the Limitations
Act and the purpose of TILA and found that the
one-year limitation in which to bring the Federal right
is not such an integral part of TILA as to outweigh the
combined purposes of that act and section 17 of the
Limitations Act.

In 1980, section 1640 of TILA was amended to cover the

situation presented in Wood Acceptance. The statute now reads: "(e) Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation. This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or setoff in such action, except as otherwise proved by State law." 15 U.S.C. § 1640(e) (1982). <u>Federal Deposit Ins. Corp. v. Ablin</u>, 177 Ill. App.3d 390 (1988) 532 N.E.2d 379.

The occurrence in the instant case took place on December 8, 1969. The counterclaim by the Riddles was not filed until April 17, 1978. Public contends that since the statute of limitations had expired, the Riddles should be barred from asserting the cause of action in a counterclaim. We disagree.

We find the reasoning in <u>Wood Acceptance Co. v. King</u> (1974), 18 Ill. App.3d 149, 309 N.E.2d 403, persuasive here. Public <u>Finance corp. v. Riddle</u>, 83 Ill. App.3d 417 (1980) 403 N.E.2d 1316.

Plaintiff respectfully requests leave of Court to amend his Complaint to the findings or supplement, whichever is determined most judicially prudent without waiving any of his rights.

### E. UCC The Codified Common-law Of Agreements (XIV-XVIII and XX-XXIV)

The UCC has derived from long standing common law of agreements/ contracts. Defendants would be woefully mistaken to presume the UCC not valid to Plaintiff's argument. All one need do is peruse case law of financial creditor actions against debtors for proof of the substance of the UCC.

1. <u>Right To Adequate Assurance UCC § 2-609</u>

more of his funds. Incorporating this claim within the due process claims might be more prudent.

### 1.     Promissory Note and Bank Holiday Act (XXV And XXVI)

Additional items supporting Plaintiff's stance, which supposedly had no basis in common sense or law of a Counterclaim character.

## G.    ICFDPA  Count XXII

Again, Defendants deceptive unfair business practices are based on the cause of action Defendants followed allegedly seeking to procure what's due them. It's logical to maintain an expectation that one with a legitimate debt owing them could prove such without fabricating documents with false statements. Following this extensive laundry list of unscrupulous activity possibly would even wipe out an honest debt. That claim is duplicative of the wording the Attorney General and FTC use drafting their documents. Plaintiff Catuara shall quote Hastings verbatim.

> "(defendants need not be given a "pretrial memorandum containing all the evidentiary support for the plaintiff's case," but only "a brief sketch of how the fraudulent scheme operated, when and how it occurred, and the participants"). See Vicom, Inc.v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 777 (7th Cir.1994).

> Moreover, the Complaint does not suggest that there was a special relationship between the Hastings and the defendants which might render them liable for failing to disclose material information about the transaction. Cf. Emery v. American Gen. Fin., Inc., 71 F.3d 1343, 1347-48 (7th Cir. 1995) (indicating that omissions can only be actionable if the context of the transaction indicates a duty to disclose); Reynolds v. East Dyer Dev. Co., 882 F.2d 1249, 1252 (7th Cir. 1989) (stating that "mere failure to disclose, absent something more" is not fraud). Hastings v. Fidelity Mortgage Decisions Corp., 984 F. Supp. 600, 615 (N.D. Ill.1997).

## H.    Plaintiff's Tort Claims Count XXIX-XXXI

### 1.– 2.  Fraud And Defamation

Plaintiff Catuara believes these are pat evasive dismissal tactics intent on manipulation of civil procedure, again, attempting to discredit the exposure of the fraudulent concealment rampant throughout this ordeal. It's not credible for Defendants' counsel to honestly believe he can fly in the face of equity and not experience repercussions.

3.    Tortious Interference XXXI

Plaintiff shall let Defendants own case law support his sufficiently plead tortious interference claims. Under the system of notice pleading, however, all that was required to do was provide "a short and plain statement showing that [he] is entitled to relief." The district court correctly stated the elements of the tort: that Cook had a reasonable expectation of entering into a valid business relationship, that Winfrey knew of this expectancy, that she purposefully interfered to prevent the expectancy from being fulfilled, and that damages to Cook resulted from the interference. Cook responds to this dismissal by identifying Illinois cases holding that the plaintiff may point to an identifiable "class" of third parties (Plaintiff's existing or potential creditors) or with whom he had a business expectancy (and toward whom the defendant directed her interfering actions), rather than a single third party. See, e.g., River Park, Inc. v. City of Highland Park, 667 N.E.2d 499, 507 (Ill. App. Ct. 1996) (holding that a plaintiff must "allege either an interference with specific third parties or an identifiable class of third persons"); Parkway Bank & Trust Co. v. City of Darien, 357 N.E.2d 211, 237-238 (Ill. App. Ct. 1976).**HEAVNER FDCPA SPECIFIC PLEADINGS** (labeled to correspond) **ARGUMENT**

**A. Statements of FDCPA Claims**

12

Plaintiff will appease the Heavner Defendants here with their suggested deficiencies.

1. Count I – § 1692d

Plaintiff contends this is a definite attempt to harass and oppress via exposing his personal information to open public records anyone off the street can come in and review. There is no need to include a social security number in the filing other than to keep an oppressive watch over one's financial transactions or comings and goings. FDCPA example section lists are generally non exhaustive, due the vast ways one can be intimidated. WaMu has an issue with their clients making up a disproportionate number of victims to identity theft according to the California Department of Motor Vehicles.[3]

2. Count II- § 1692e(2)(A)

This act is an intentional means to deceive and expedite the foreclosure process. Disclosure of a false creditor may state a claim for violation of the FDCPA.Zanayed v. Gertler & Gertler, Ltd., 2000 U.S.(N.D. Ill. 2000).

3. Count IV- § 1692(e)

Heavner's general practice of not following proper procedure under the FDCPA exposes them to liability. According to the common definition of the word "verification" the Heavner Defendants have as of yet provided such and have no right to continue these court room antics. However, because the list is non-exhaustive, a debt collection practice can be "false, deceptive, or misleading" in violation of § 1692e even if it does not fall within any of the subsections of § 1692e. Clomon v. Jackson, 988 F.2d 1314, 1318 (2nd Cir. 1993).

4. Count V- § 1692f

they will be liable for damages under both. <u>Berryhill v. Rich Plan of Pensacola</u>, 578 F.2d 1092(5th Cir. 1978).

### F.    Due Process Against Non-State Actor

Yes, the due process claims are right around the corner and they come from the highest court in the land. Plaintiff does not take kindly to these time consuming violations of his Civil Rights and the frittering away of the Courts over burdened resources. Just maybe the Defendants will have second thoughts the next time.

### CONCLUSION

For the reasons stated herein Plaintiff respectfully requests the Court strike Defendants motions to dismiss with prejudice, order the Defendants to brief the RESPA action, and grant leave of Court to Amend the complaint pursuant to rule 15(a).

Respectfully submitted,

By:  Chad F. Catuara

Chad F. Catuara
14540 Lavergne
Midlothian, Illinois 60445
(708) 597-1873

Since IIS is covered by the Act, its collection communications must also comply with the Act. Among other things, this means that the letter referred to above must contain the following disclosures:

a) The letter must disclose that IIS is attempting to collect a debt and any information obtained will be used for that purpose, in accordance with Section 807(11);

b) The letter (or a written communication sent within 5 days) must contain the information required by Section 809(a), including a statement of the consumer's right to dispute the debt under Section 809(b).

Without these disclosures, we think the letter would violate these sections. In addition, if the name "Nationwide Message Delivery Service" is not the true name of IIS's business, the letter would also violate Section 807(14), which requires that only the debt collector's "true" name be used.

Please note that this is only the opinion of Commission staff; as such, it does not bind the Commission itself. If you have further questions, please do not hesitate to contact me.

Sincerely,

John F. LeFevre

March 8, 1996

Gordon N.J. Kroft, Esq.
Tenney & Bentley
111 West Washington Street
Suite 1900
Chicago, Illinois 60602

Dear Mr. Kroft:

This is in response to your letter dated February 14, 1996, in which you request a staff opinion regarding the Fair Debt Collection Practices Act (FDCPA). You ask whether your firm complies with the FDCPA when it attaches the notice that you enclosed with your letter to each summons. Under the principals that the Supreme Court set out in *Heintz v. Jenkins*, law firms that are "debt collectors" presumably must include Section 809 notices in connection with every summons, if the summons is the first communication with the consumer in connection with the collection of a debt. Moreover, while we do not, as a matter of policy, approve specific language in collection notices, it does not appear that your notice violates the FDCPA.

The views expressed herein represent an informal staff opinion. As such, they are not binding on the Commission. They do, however, reflect the staff's current enforcement position.

Sincerely,

Thomas E. Kane
Attorney
Division of Credit Practices

April 26, 1996

Burton W. Sandler, Esq.
P.O. Box 2300
Ocean City, Maryland 21842-2300

Dear Mr. Sandler:

This will respond to your letter dated November 1, 1995. I apologize for the delay. You ask whether the staff of this division continues to hold the position set out in my May 24, 1991 letter to Peter S. Philbin regarding the Fair Debt Collection Practices Act (FDCPA) and its application to community association assessments. The answer is that my letter still reflects this division's position.

The views expressed herein represent an informal staff opinion. As such, they are not binding on the Commission. They do, however, reflect the staff's current enforcement position.



Mr. David C. Farmer
Lynch and Farmer
Suite 2500 Mauka Tower
Grosvenor Center
737 Bishop Street
Honolulu, Hawaii 96813

Dear Mr. Farmer:

This is in reply to your recent letter concerning a situation where a loan, originally made by a mortgage servicing company, is assigned to another party, but the servicer continues to service the loan on behalf of the assignee. You ask whether the servicing company is covered by the Fair Debt Collections Practices Act (FDCPA) (copy enclosed) when the loan goes into default and the company sends a dunning letter to the borrower.

Section 803(6)(F)(ii) of the FDCPA exempts from the definition of "debt collector" persons attempting to collect debts owed others to the extent that the collection activity ". . . (ii) concerns a debt which was originated by such person." It appears that this is the situation you describe. If so, the servicing company appears to be exempt from coverage of the Act.

I hope this is responsive to your inquiry.

Sincerely,

John F. LeFevre

August 30, 1996

Mr. John P. Fedele, President
Judgment Collection Services, Inc.
4001 Kennet Pike
Suite 134
Greenville, DE 19807

Dear Mr. Fedele:

Thank you for your recent letters concerning whether your company is covered by the Fair Debt Collection Practices Act (FDCPA) (copy enclosed). You state that your company takes assignments of existing judgments from judgment creditors (debts in default) and collects them through the execution process. You ask whether the FDCPA applies to your activities. I apologize for the delay in replying.

In my opinion, the answer is yes. Although I do not know the person at the Commission with whom you conversed, your company clearly seems to be one ". . . the principal purpose of which is the collection of . . . debts" (Section 803(6)). In addition, since JCS routinely takes assignment of debts in default for the purpose of collection, we do not believe JCS qualifies as a "creditor" under the Act. (Section 803(4)).

In this circumstance, JCS would be required to comply with the notice requirements in the Act, as prescribed by Section 807(11) and 809.

I hope this responds to your inquiry.

Sincerely,

John F. LeFevre

EXHIBIT

B

**FEDERAL TRADE COMMISSION**
WASHINGTON, D. C. 20580

BUREAU OF
CONSUMER PROTECTION

May 15, 1978

Mr. George F. Palcanis
Vice President and General Counsel
Security Pacific Mortgage Corp.
P.O. Box 2450
Denver, Colorado 80201

Dear Mr. Palcanis:

This is in reply to your letter of April 18, 1978
requesting a clarification of our letter to you of
April 13, 1978. (See Staff Interpretives, Fair Debt
Collection Practices Act, Volume 1, page 11.)

It is our understanding that your letter refers
specifically to situations in which Security Pacific Mortgage
Corporation "... purchases a loan from another lender,
sells it to an investor and retains the servicing and
collection." Your concern centers around those instances
in which such a loan is delinquent at the time it is
purchased, is not returned to the seller and Security
Pacific commences collection efforts.

It is our opinion that if such incidents are truly
isolated as you suggest, and collection efforts with
respect to such loans do not occur in the course of
your business on a "regular" basis, as that word is used
in Section 803(6) of the Act, your organization would
not fit the definition of the term "debt collector",
and Security Pacific would not be subject to the Act.
The word "regularly" is commonly understood to mean
usually, normally, or customarily, and any determination
of whether your company functions as a "debt collector",
must be based in part on the application of the meaning
of those words to the collection activities engaged in by
Security Pacific.

Further, if those consumer loans, which you describe
in paragraphs two and three of your March 21, 1978
letter are in default when sold or go into default
after they are sold, retention of the servicing and
collection aspects of the loans would clearly subject

94

Security Pacific to the requirements of the Act notwithstanding the exclusionary language contained in Sections 803(6)(G)(ii)-(iii) of the Act. Section 803(6)(G)(ii) has been interpreted to apply to the original credit grantor and not a purchaser for value before default. Section 803(6)(G)(iii) applies in the case where a debt has been referred by the creditor to the person collecting the debt prior to the debt going into default. Section 803(6)(G)(iii) is best illustrated in the case involving a mortgage servicing agreement between two banks, whereby one bank agrees to service accounts of the forwarding bank. The forwarded accounts, however, are not in default when received. The exemption in Section 803(6)(G)(iii) would not apply where the servicing bank transfers or sells the accounts to another person but retains collection authority on behalf of the new purchaser or transferee.

Our response to your inquiry, contained in the third paragraph of this letter, is based on the assumption that your organization does not regularly engage in any other practice which would otherwise bring it within the definition of debt collector for reasons different from those suggested elsewhere in this letter.

The views expressed herein represent the present enforcement position of Commission's staff and are not necessarily the views of the Commission. Accordingly, they are not binding on the Commission.

Very truly yours,

Alan D. Reffkin
Attorney
Division of Credit Practices