# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CATUARA,

        Plaintiff,

v.

HEAVNER HANDEGAN et al.,

        Defendants.

Case No. 03 CV 563

Judge Gottschall

**DOCKETED**
OCT 1 6 2003

FILED
03 OCT 15 AM 9:14
CLERK COURT
U.S. DISTRICT

## NOTICE OF FILING

To: Daniel F. Konicek
    Jeffrey T. Mitchell
    KONICEK & DILLION, P.C
    21. W. State Street
    Geneva, Illinois 60134
    (630) 262-9655
    (630) 262-9659 (Fax)

Edward S. Weil
Partick T. Stanton
Arika J. Osacky
Schwartz, Cooper, Greenberger,
& Krauss Chartered
180 N. LaSalle St., Suite 2700
Chicago, Illinois 60601
(312) 782-8416 (Fax)

PLEASE TAKE NOTICE that on October 15, 2003, Chad F. Catuara's **Mandatory Judicial Notice No. 2** was filed with the Clerk of the United States District Court for Northern District of Illinois Eastern Division, a copy hereto attached.

By: *[signature]*
Chad F. Catuara

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CATUARA, | ) |
| Plaintiff, | ) ) ) ) ) |
| v. | ) Case No. 03 CV 563 ) ) ) Judge Gottschall |
| HEAVNER HANDEGAN et al., | ) ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

To: Daniel F. Konicek
    Jeffrey T. Mitchell
    KONICEK & DILLION, P.C
    21. W. State Street
    Geneva, Illinois 60134
    (630) 262-9655
    (630) 262-9659 (Fax)

Edward S. Weil
Partick T. Stanton
Arika J. Osacky
Schwartz, Cooper, Greenberger,
& Krauss Chartered
180 N. LaSalle St., Suite 2700
Chicago, Illinois 60601
(312) 782-8416 (Fax)

I hereby certify delivery of a copy of Chad F. Catuara's **Mandatory Judicial Notice No. 2** to the person(s), as listed above, on the 14th day of October, 2003, by prepaid U.S. certified mail # 7002 3150 0003 5247 6715(K&D P.C.) and # 7002 3150 0003 5247 6722. 15th
(Schwartz Chtd.)

By: /s/ Chad F Catuara
Chad F. Catuara

Service mailing list:

| | |
|---|---|
| Daniel F. Konicek | Edward S. Weil |
| Jeffrey T. Mitchell | Partick T. Stanton |
| KONICEK & DILLION, P.C | Arika J. Osacky |
| 21. W. State Street | Schwartz, Cooper, Greenberger, |
| Geneva, Illinois 60134 | & Krauss Chartered |
| (630) 262-9655 | 180 N. LaSalle St., Suite 2700 |
| (630) 262-9659 (Fax) | Chicago, Illinois 60601 |
| | (312) 782-8416 (Fax) |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CATUARA,

        Plaintiff,

v.

        Case No. 03 CV 563

        Judge Gottschall

HEAVNER HANDEGAN et al.,

        Defendants.

## MANDATORY JUDICIAL NOTICE No. 2

NOW COMES, Plaintiff Chad F. Catuara giving all parties and the Court Mandatory Judicial Notice of on point relevant Controlling Precedents, pursuant Federal Rules of Evidence 201(d). In support of this notice, Plaintiff cites the following:

1. **PLEADINGS RULE 9(b)**
   We acknowledge that Rule 9(b) does not require plaintiffs to plead facts to which they lack access prior to discovery. Katz, 36 F.3d at 676. Thus Katz did not have to plead specific facts about exactly what contradictory information Household possessed when it made favorable earnings forecasts in September 1991, if that information was not available to him without discovery. (cf. to Defendants WaMu's March 20, 2003, Motion to Dismiss p. 13 and Defendants Heavner Handegan's Motion to Dismiss p. 9.)

2. **TIME TO FILE REMOVALS**
   Undoubtedly, when the case, as stated in the plaintiff's declaration, is a removable one, the defendant should file his petition for removal at or before the time when he is required by the law or practice of the State to make any defence whatever in its courts. Edrington v. Jefferson, 111 U.S. 770; Baltimore & Ohio Railroad v. Burns, 124 U.S. 165; Kansas City & c. Railroad v. Daughtry, 138 U.S. 298; Martin v. Baltimore & Ohio Railroad, 151 U.S. 673, 686, 687. (cf. May 8, 2003, Order p.3 fn.3)

3.  **FDCPA**
    **Re: 12(b)(6) (cf. defendants' motions)**
    Mistretta v. Babb, (N.D.Ill. 2003) No. 03 C 00808
    United States District Court, N.D. Illinois, Eastern Division. April 3, 2003

    Because Plaintiff's complaint alleged that Defendants' dunning letter was confusing, her complaint is legally sufficient and thus survives a motion to dismiss under Rule 12(b)(6).

    The Seventh Circuit has held that a FDCPA complaint states a legal claim, and therefore survives a motion to dismiss under Rule 12(b)(6), simply by alleging that a dunning letter is confusing. Marshall-Mosby v. Corporate Receivables, Inc., 205 F.3d 323, 326 (7th Cir. 2000); see also Walker v. Nat'l Recovery, Inc., 200 F.3d 500 (7th Cir. 1999); Johnson v. Revenue Mgmt. Corp., 169 F.3d 1057, 1059 (7th Cir. 1999) (stating a contention that a debt-collection notice is confusing is a recognized legal claim; no more is needed to survive a motion under Rule 12(b)(6)).

4.  **FDCPA Re: General intent (cf. entire proceedings)**
    "The FDCPA, codified at 15 U.S.C. § 1692, prohibits, among other things, the use of false or misleading representations by debt collectors. 15 U.S.C. § 1692(e). Its "purpose ... is to eliminate abusive debt collection practices...." 15 USC § 1692(e). The legislative history suggests a broad definition of such practices and wide discretion in the courts to proscribe them: "this bill prohibits in general terms any harassing, unfair, or deceptive collection practices, [enabling] the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed ... the committee views this legislation as primarily self-enforcing; consumers who have been subjected to collection abuses will be enforcing compliance." Senate Report No. 95-382, 1977 U.S.Code. Cong. and Adm.News. Pg. 1695, 1698, 1699. *See also:* 15 U.S.C. § 1692 Congressional Findings and Declaration of Purpose)." Travieso, et al. v. Gutman, Mintz, Baker & Sonnenfeldt, P.C., et al., E.D. N.Y., (1995) (emphasis added).

    "Unlike most private tort litigants, [a plaintiff that brings an FDCPA action] seeks to vindicate important ***** rights that cannot be valued solely in monetary terms", City of Riverside v. Rivera, 106 S. Ct. 2686 (1986), and congress has determined that the public as a whole has an interest in the vindication of the statutory rights. Id. Tolentino v. Friedman, 46 F.3d 645 (7th Cir 1995).

5.  **FDCPA Re: injunctions (cf. May 8, 2003 Order)**
    Piper v. Portnoff Law Assocs., 262 F. Supp. 2d 520 (E.D. Pa., 2003).

2

**OVERVIEW:** A federal district court enjoined a state court an action foreclosing by sheriff's sale a lien for a past due water bill against a homeowner's residence, where the homeowner was being charged excessive attorney's fees, in aid of its jurisdiction

Following a hearing held on May 14, 2003, this court granted plaintiff's motion for a preliminary injunction and enjoined the defendants from taking any action to facilitate the sheriff's sale of Bridget Piper's home.

[a] debt collector's decision to proceed in rem rather than in personam is insignificant when determining whether the underlying obligation falls within the FDCPA's statutory definition. If a debt collector were able to avoid liability under the FDCPA simply by choosing to proceed in rem rather than in personam, it would undermine the purpose of the FDCPA

West v. Costen, 558 F. Supp. 564 (W.D. Vir 1983):

### 1. The FDCPA

[I]n 1977 Congress enacted the FDCPA in response to national concern over "the use of abusive, deceptive and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).The purpose of the FDCPA is "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." S.Rep. No. 382, 95th Cong., 1st Sess. 1-2,reprinted in 1977 U.S. Code Cong. & Ad. News 1695, 1696.

The FDCPA sets forth a nonexclusive list of unlawful debt collection practices. Although it does provide for public enforcement by the Federal Trade Commission (FTC), see15 U.S.C. § 1692l, it is "primarily self-enforcing," S.Rep. No. 382, supra at 5, 1977 U.S. Code Cong. & Ad. News at 1699, through private causes of action.

Plaintiffs then moved for class certification and for a preliminary injunction prohibiting the defendants from using certain collection practices. After an evidentiary hearing, supplemented by affidavits, the court on **January 17, 1980**, entered an order finding for purposes of injunctive relief only a continuing pattern of practices prohibited by the FDCPA, certifying a class for purposes of injunctive relief only, and enjoining the defendants from violating various provisions of the Act." **(emphasis added)**

Loigman v. Kings Landing Condominium Association, Inc.; 324 N.J. Super. 97;734 A.2d 367( N.J. Super 1999):

"Interestingly, the FDCPA expressly creates only a cause of action for monetary relief, and is silent with regard to a court's ability to provide equitable relief as sought here. The FDCPA does not, however, prohibit the granting of equitable

relief, including the discharging of a lien filed at a time when the creditor is prohibited by the FDCPA from taking further collection efforts. *Where a "legal right has been infringed, a remedy will be given," is how Pomeroy expressed the equitable maxim more commonly phrased "equity will not suffer a wrong without a remedy."* 2 Pomeroy, Equity Jurisprudence (1941) § 423. In the absence of legislative prohibition, the power of a court of equity to remedy a wrong exists. It then becomes the province of the court to determine whether, under the particular circumstances of the case, the remedy should be provided. Other than the absence of a provision in the FDCPA which would expressly support such a conclusion -- which only creates a vacuum, not a prohibition -- the court can fathom no reason why it may not, in good conscience and in the discretionary exercise of its equitable powers, remedy the actions taken by the Association in breach of 15 U.S.C. § 1692g(b) by ordering a discharge of the lien." *(emphasis added)*

6. **DISCOVERY / SUMMARY JUDGMENT**
   Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292 2nd Cir., (2003).
   ""Fed. R. Civ. P. 56(f) provides, as interpreted by court opinions, that when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion." Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc., 271 F.3d 374, 386 (2d Cir. 2001). Accordingly, we have held that summary judgment should only be granted if *"after discovery*, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Hellstrom v. United States Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000) (internal quotation marks omitted) (alterations in original). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." Id." Miller.

7. **ESTOPPEL**
   Baldwin v. Wolff, 294 Ill. App. 3d 373, 378 (1998).
   Under the doctrine of equitable estoppel, an individual may be precluded by his conduct from asserting a right he may otherwise have where his statements or conduct induces another to do something that he would otherwise not have done but for the individual's statements or conduct.

8. **ILLINOIS FRAUD AND DECEPTIVE PRACTICES ACT**
   Bradley v. Fairbanks Capital Corporation, (N.D.Ill. 2003):
   Plaintiffs allege that "Roeser & Vucha had no information that supported the filing of the [2002] complaint and had no basis for alleging the default claimed or that Fairbanks had complied with the note and mortgage, as is required in any action seeking to enforce a contract."

Notwithstanding Fairbanks' arguments to the contrary, in People ex. rel. Daley v. Datacom Systems Corp., 146 Ill.2d 1, 585 N.E.2d 51 (1991), the Illinois Supreme Court concluded that "debt collection practices are embraced by the [Illinois Consumer Fraud Act]." Id. at 31.

Given the Datacom decision, the court further concludes that debt collection practices are a consumer activity that involves trade or commerce. See Perperas, at *3 (Perperas v. United Recovery Systems, Inc., (N.D.Ill. 1997). Lending activities are covered by the Illinois Consumer Fraud Act, as well. See, e.g., April v. Union Mortgage Company, 709 F. Supp. 809 (N.D.Ill. 1989) (borrowers stated claim under Illinois Consumer Fraud Act by alleging that lender's failure to include in finance charge that portion of amount retained as "prepaid finance charge" constituted unfair and deceptive practice). The fact that there was not a consumer transaction between plaintiffs and defendant Fairbanks[fn5] does not alter the court's conclusion.

Last, defendant's argument that plaintiffs have not met the heightened pleading standards required under the Illinois Consumer Fraud Act is not persuasive. Plaintiffs identify a specific complaint filed by defendants that they allege was baseless, and provide extensive background facts to illuminate that allegation. Thus, the court concludes that defendant Fairbanks has ample notice of plaintiffs' claims against it.

9. **ILLINOIS INSTRUMENTS & RELATED MATTERS**
Moore v. Lewis 366 N.E.2d 594 Ill.App. 1977:
Mortgage, which in Illinois is only regarded as mere incident to debt, is not assignable at law; it is debt which is assigned, and transfer of debt carries with it mortgage security.

Locks v. North Towne Nat. Bank of Rockford 451 N.E.2d 19 Ill.App. 2 Dist.,1983:
Proof of possession is essential for standing to enforce payment on an instrument. S.H.A. ch. 26, ¶¶ 1-201(20), 3-301.

A plaintiff's legal interest to sue upon an instrument must be shown as of the commencement of the suit. (Kroer v. Smith (1943), 318 Ill.App. 489, 48 N.E.2d 743; Investment Service Co. v. Martin Bros. Container and Timber Products Corp. (1970), 255 Or. 192, 465 P.2d 868.)

Oulvey v. Converse, 326 Ill. 226, 157 N.E. 245, 247:
The Illinois cases hold that in an action by one other than the payee the complaint must allege an assignment or indorsement of the note or "some other fact to show plaintiff's ownership."

Brannan on Negotiable Instruments Law, 6th Ed., p. 520, says a plaintiff in possession, but not payee, indorsee or bearer, to bring himself within the description of transferee under section 49 "must show that a holder transferred it

to him for value." The Supreme court of Illinois holds that mere possession by such a holder "is not alone evidence of title, either legal or equitable, in the possessor" and "the burden [of proof] is on the possessor to prove his equitable title by showing a delivery to him with the intent to pass title." Elvin v. Wuchetich, 326 Ill. 285, 157 N.E. 243, 245; Collins v. Ogden, 323 Ill. 594, 154 N.E. 701; Brannan's Negotiable Instruments Law, 6th Ed., p. 519.

Ainsworth Corp. v. Cenco, Inc., 107 Ill. App. 3d 435, 439, 437 N.E.2d 817 (1982) ("fraud in the inducement vitiates all contracts"):
"it is black letter law that the misrepresentations *** vitiate any obligation that party has under the contract."

Eisenberg v. Goldstein, 29 Ill. 2d 617, 622, 195 N.E.2d 184 (1963):
If a defrauded party does not "disaffirm or abandon the transaction with all reasonable diligence" and "conducts himself *** as though [the contract were] still subsisting and binding," he waives his right to rescind and must continue to perform his obligations under the contract.

10. **NONFRIVOLOUS: VALIDITY OF TRANSACTION ARGUMENT**
American Express Co. vs. Citizens State Bank, 194 N.W. 427, 181 Wis. 172:
"Neither, as to include in its powers not incidental to them, is it a part of a bank's business to lend its credit. If a bank could lend its credit as well as its money, it might, if it received compensation and was not careful to put its name only to solid paper, make a great deal more than any lawful interest on its money would amount to. If not careful, the power would be the mother of panics . . . Indeed, lending credit is the exact opposite of lending money, which is the real business of banking, for while the latter creates a liability in favor of the bank, the former gives rise to a liability of the bank to another." 1 Morse, Banks and Banking (5th Ed.) § 65; Magee, Banks and Banking (3 Ed.), § 248; 1 Michie, Banks and Banking, § 99.

Mr. Justice Marshall said:

"The doctrine of ultra vires is a most powerful weapon to keep private corporations within their legitimate spheres and to punish them for violations of their corporate charters, and it probably is not invoked too often; but to place that power in the hands of a corporation itself, or a private individual, to be used by it or him as a means of obtaining or retaining something of value which belongs to another, would turn an instrument intended to effect justice between the state and corporations into one of fraud as between the latter and innocent parties. Such is the modern doctrine, evolved and settled in the progress of events, reaching from the time when private corporations were few and the doctrine of ultra vires invoked quite as freely as to them as to public corporations, to a time when substantially all restrictions to the formation of such private bodies were removed, and they were authorized and commenced to exist, great and small,

everywhere, for the purpose of conducting almost every kind of legitimate business. If such a body transcend its powers it commits a wrong against the state, and ordinarily it is for the state, only, to call it to account for such violation." *431

Mazer Co., Inc. v. Blauer-Goldstone Co., 259 Ill. App. 305 (1930):
The law is well settled that it is an ultra vires act for a corporation to issue accommodation paper, and no recovery can be had by the plaintiff unless the plaintiff is a holder in due course and there is a consideration moving from the plaintiff, and without notice that the note reduced to judgment is accommodation paper. Section 52 of the Negotiable Instruments Act, Cahill's St. ch. 98, ¶ 72, defines "holder in due course" as one who has taken the instrument before maturity and upon the condition, among others, Page 310 that he took it in good faith and for value, and with no notice of any infirmity in the instrument or defect in the title of the person negotiating it.

McCormick vs. Market National Bank, 165 U.S. 538:
"A contract made by a corporation beyond the scope of its corporate powers is unlawful and void."

Atkinson v. Englewood State Bank, 141 Colo 436:
The extension of credit is not the giving of value. See: UCC 3-303:0

Bankers Trust vs. Nagler 229, NYS 2nd 142:
"A bank is not the holder in due course upon merely crediting the depositors account."

Farmers & Miners Bank vs. Bluefield National Bank, 11 F2d 83, 271 US 669:
"A national bank has no power to lend its credit."

St. Louis Savings Bank vs. Parmalee, 95 U. S. 557:
"Banking Associations from the very nature of their business are prohibited from lending credit."

Norton Grocery vs. Peoples National Bank, 144 S.E. 501, 151 Va. 1920:
"National Banks may lend their money but not their credit."

First National Bank of Tallapoosa vs. Monroe, 135 Ga 614, 69 SE 1123, 32 LRA:"A bank can lend its money but not its credit."

First Intermediate Credit Bank vs. Herisson, 33 F 2nd 841:
"It is not within the statutory powers for a national bank, even though solvent, to lend its credit.

First National Bank of Amarillo vs. Slaton Independent School District, Tex Civ App 1933, 58 SW 2d 870):
"Banking corporations cannot lend credit."

7

Howard & Foster Co. vs. Citizens National Bank of Union,
133 SC 202, 130 SE 758):
"A national bank, under federal law being limited in its powers and capacity, cannot lend its credit."

Gardilner Trust vs. Augusta Trust, 134 Me 191:
"Nowhere is the express authority granted to the corporation to lend its credit.

Raine v. State. 226 S.W. 189, 143 Tenn. 168:
Legal tender notes are not good as lawful money of the U.S.

Commercial Nat. Bank v. Pirie, 82 Fed. 779, 27 C.C.A.:
It cannot for the accommodation of another indorse his note or guarantee the performance of obligations in which it has no interest. Such an act is an adventure beyond the confines of its charter, and, when its true character is known, no rights grow out of it, though it has taken on in part the garb of a lawful transaction. *646

## VERIFICATION

Under penalties as provided by law of the United States the undersigned certifies and declares that the statements set forth in this instrument are true and correct except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

By: _____

October 14, 2003

Chad F. Catuara
14540 S. Lavergne Ave.
Midlothian, Illinois 60445
(708) 597-1873

8